ABRAHAM v. BURSTEIN et al.

(Supreme Court, Appellate Division, First Department. April 17, 1903.)

1. BROKERS—RIGHT TO COMMISSIONS—APPEAL—VERDICT AGAINST EVIDENCE.
   A verdict for plaintiff in an action for commissions as a broker, involving the questions of his employment by defendants and his being the procuring cause of the sale, held not against the weight of evidence.
   Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by David Abraham against Ida Burstein and another. From a judgment on a verdict for plaintiff and from an order denying a motion for a new trial, defendants appeal. Affirmed.

The action is brought to recover broker's commissions. The complaint avers that between January 1, 1899, and April 15, 1899, the plaintiff, at the instance and request of the defendants, procured a purchaser—one Michael Price—of their premises 222 and 224 Broome street, and that such services were accepted by them, said Price paying for the premises which defendants conveyed to him the sum of $58,500. The answer was a general denial. The plaintiff testified that in November or December, 1898, Mr. Pomeranz spoke to him about the building, and requested him to get a customer, mentioning that his partner was Mr. Burstein, husband of the defendant Ida Burstein, and stating that the price was $60,000; that the next day he was introduced to Mr. Burstein, who also asked him to get a purchaser for $60,000, and Mr. Pomeranz, in the presence of Mr. Burstein, mentioned Ida Burstein; that a week or two later he had a talk with the defendant Ida Burstein (who, with the defendant Pomeranz, owned the building), as he had a customer, and she told him she gave everything over to her husband, and was satisfied with whatever he did; that he obtained a customer—Michael Price, a jeweler —whom he had found in his jewelry store, and told about the property and the owner; that he "introduced him to the piece of property," and Mr. Price promised to take a look at it; that thereafter he had a conversation with Mr. and Mrs. Burstein, and told them he had an offer from Mr. Price for $57,000, and Mrs. Burstein said that she "gave it all over to her husband and Mr. Pomeranz, and she was satisfied with whatever they did"; that subsequently, in Mr. Burstein's house, he told Mr. or Mrs. Burstein or Mr. Pomeranz that Mr. Price would give $57,500, and something was said about a higher price, and in March he brought back an offer of $58,000, but they said they would not sell for that figure; that he went to Mr. Price about twelve times and reported five or six times to Mr. or Mrs. Burstein or Mr. Pomeranz; that Mr. Price bought the property, and told him so, and he went to the defendants' the next day, but they refused to pay him commissions. It is not disputed that Mr. Price purchased the premises for $58,000, the consideration named in a written contract which he made with the defendant Ida Burstein March 14, 1899, and that a deed from her and Mr. Pomeranz was given him April 12, 1899.

Joseph Siegel testified that he had been in the real estate business for many years, and that the ordinary rate of brokerage for procuring a customer is 1 per cent.; that he one day met the plaintiff at Mr. Price's, and went with Mr. Price, at the latter's request, to investigate the building, and appraise it; that he there saw Mr. Pomeranz, and told him that Mr. Price was willing to buy, because the plaintiff had offered the property, and Mr. Pomeranz asked him if he was a broker, and he replied that he was not in that transaction, as the plaintiff had offered the property; that the amount to be paid was talked over, the sum named being $58,000 or $58,500; that he had also, at Mr. Price's request, gone once with the plaintiff to see Mr. Burstein, and told the latter that Mr. Price was plaintiff's customer. Samuel Siegel testified that he went with his father and Mr. Price to inspect the building, and saw Mr. Pomeranz, and, he thought, Mrs. Burstein; and that he went afterwards with Mr. Price, the night he went to buy the property, and met Mr. Reiss, a broker, but was not present when any contract was made.

Motion to dismiss the complaint was denied, and exception taken, and the defendants then called Mr. Price as their witness. He testified that he knew all the parties, and that he had conversation with the plaintiff about different pieces of property in the city, but not with respect to the premises on Broome street, and that, though he went there once with Mr. Siegel, he never went with the plaintiff, and the plaintiff had never introduced him to Mr. Pomeranz or Mr. or Mrs. Burstein, and he had never authorized the plaintiff to make any offer for him for this property; and the only conversation he ever had with Mr. Burstein was the night he closed the deal at Mr. Burstein's house, where he went with his brokers, Mr. Reiss and Mr. Kramer, and Mr. Geiger;

that the latter introduced him to Mr. Burstein, and first spoke to him of the property, and induced him to buy it; that he went to the building with Mr. Siegel, who introduced him to Mr. Pomeranz; that Mr. Pomeranz told him he had sold out his interest in the property to Mr. Burstein; that thereafter, when he went to Mr. Burstein's house, he offered first $57,000, and finally $58,500; that he only made the offer that night, and that night was the only time he had any idea to buy, and he made the deposit then and there, and closed the deal. Mrs. Burstein testified that she did not know the plaintiff, and that she never saw him at her house; and Mr. Burstein testified also that he had never seen plaintiff at the house, and did not know him at the time of the sale, and he had never known that plaintiff had Mr. Price for a customer; that he first met Mr. Price, and first heard of him, the day of the sale, through Mr. Kramer and Mr. Reiss, who are brokers, the former being now in Europe; that on the evening of the sale (March 14, 1899) Mr. Price came in with these brokers, and also Mr. Sobel, another broker, and offered him $57,000, but he named $61,000, and Mr. Price offered $57,500, and then $58,000, and he held out for $59,500, and it was 2 o'clock in the morning, and Mr. Price telephoned for Mr. Geiger, and he came; that at last they agreed on $58,500, and an allowance of half a month's rent, and a diamond pin, worth $100, "and I should only pay $300 commission to these brokers— to Mr. Geiger and Mr. Reiss and Mr. Sobel and Mr. Kramer; they were to receive that commission. They were all present, and I took a writing from them that they had receipted, and the contract was signed." At this point three papers were offered by the defendant, but excluded under exception, and marked for identification—one signed by Mr. Price, reciting that the brokers who introduced him and promoted the sale were the persons named; another, signed by the brokers, whereby they agreed to accept $300 for brokerage for the sale; and the third, a receipt signed by three of the brokers for part payment of commission. Mr. Burstein further testified that he was not asked by the plaintiff for any commission until the action was brought; that the broker Mr. Reiss had been interested in buildings with him, and had subsequently become his partner, and that the broker Mr. Geiger is a brother-in-law of Mr. Price. Mr. Geiger testified that he had brought Mr. Price's attention to the building, and told him Mr. Burstein owned it, and was called in the night of the sale, and heard the offers and the terms as testified by Mr. Price. He was not permitted to say whether he received commission for his services in the matter, and exception was taken. Joseph Reiss testified that he introduced Mr. Price to Mr. Burstein, and told Mr. Price about the building. Mr. Pomeranz testified that Mr. Siegel brought Mr. Price to him, and that the plaintiff asked him, when present in the building with Mr. Siegel, if he wished to sell the property; that he knew the plaintiff was a broker, and replied that he would sell for $60,000; that the plaintiff came to him, saying he had a customer who would pay $57,000; that he spoke to Mr. Burstein of the offer, but nothing was done, and the plaintiff came again, and said his customer would pay $57,500, and he spoke to Mr. Burstein again, who told him to sell half if he wished; that the plaintiff came again to him, and offered $58,000, and he told Mr. Burstein, who replied that he did not want to sell; that he then offered Mr. Burstein his half interest, saying, "Nobody wants to buy half," and Mr. Burstein agreed to take it, and by contract dated March 7, 1899, Mrs. Burstein purchased his interest for $1,900, of which $100 was paid him, and when the plaintiff again came he told him he had sold his interest to Mr. Burstein; that the talk about the plaintiff's customer began in December or January, and that no one else had offered $57,000 for the property.

Samuel J. Siegel, recalled, testified that in conversation with Mr. Price the day of the sale the plaintiff was mentioned, and Mr. Price said he was going that day to buy the property offered him by the plaintiff, and which Joseph Siegel had inspected. Mr. Price was then recalled, and denied that he told Mr. Siegel that the property had been offered him by the plaintiff; and, though admitting that Mr. Siegel walked along with him as he was going to Mr. Burstein's the day of the sale, denied also that he spoke of the property. Mr. Reiss, recalled, testified that he was with Mr. Price and Mr. Siegel the day of the sale, and did not hear the plaintiff mentioned, but Mr. Price

told Mr. Siegel that he was going to buy a house, and wished him not to come along, but to stay away.

Motion to dismiss the complaint was renewed and denied, and exception taken. In charging the jury the court called attention to the deed given by Mr. Pomeranz and Mrs. Burstein April 12, 1899, and the testimony that prior thereto Mr. Pomeranz had in fact sold his interest in the property to the Bursteins, and said that, if he had so sold his interest to them in good faith, he was not liable for commission to the plaintiff. This portion of the· charge was, in effect, repeated upon defendant's request. In speaking of Mr. Burstein, the defendant's attorney stated that there is no question that he was apparently Mrs. Burstein's agent. The jury returned a verdict for plaintiff in the sum of $585, or 1 per cent. of the selling price, and from the judgment thereupon entered the defendants appeal.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. Charles Weschler, for appellants.

Francis A. McClosky, for respondent.

O'BRIEN, J. When the plaintiff rested, a motion was made to dismiss the complaint upon the grounds that the plaintiff had not made out a prima facie case by showing an employment as a broker by the defendants, or either of them, and had not shown that he was the efficient or procuring cause for the sale of the property to the purchaser, Mr. Price. As the case then stood, the plaintiff had testified with respect to ·his employment as broker, and what he had done thereunder in calling the attention of Price to the property, from which testimony the jury might infer that he was the procuring cause of the sale. He having been corroborated, in many of the essential features necessary to be established, by two other witnesses, we think a prima facie case was made out, which justified the denial of the motion to dismiss the complaint.

The defendants then assumed the burden of introducing their defense, and, while the defendant Pomeranz admitted the employment of the plaintiff as broker, he and the other defendants and the purchaser contradicted the plaintiff and his witnesses on every material point. There was thus presented, at the close of all the testimony, a case which, under the rule laid down by the Court of Appeals in McDonald v. Metropolitan Street R. R. Co., 167 N. Y. 66, 60 N. E. 282, was properly to be submitted to the jury. Apart from that authority, however, and having in mind the general principle that upon conflicting evidence the jury must pass, and that their verdict, where the issue turns entirely upon the credibility of the witnesses, must determine upon which side the truth is, we find this case peculiarly one within the province of the jury to pass upon; for, considering the way in which the witnesses testified, there was justification for that portion of the charge wherein the learned trial judge said:

"It is very apparent to you, as it is to me, that one side or the other has committed deliberate perjury. There is not any chance of escape; there is not any chance for error. One side. or the other has come here and has tried to succeed in this litigation by lying to you. The burden is on you to determine who is telling the truth here."

The verdict was for the plaintiff, and we have no right to disturb that verdict, unless, as further contended by the appellant, it was

against the weight of evidence. In considering this question, we are, to some extent, required to pass over the same road that was traveled by the jury, and, taking into consideration not alone that there were one or two more witnesses on the side of the defendants, to determine whether, as against this, there was sufficient corroboration and probability with respect to the plaintiff's version to offset the vigorous onslaught which, by a contest of every material point, the defendants made upon the plaintiff's position. As already stated, the plaintiff, upon the subject of employment, was corroborated by the defendant Pomeranz; and the jury were not, in view of that fact, compelled to accept as final the testimony of Mr. and Mrs. Burstein that they did not even know the plaintiff, which, of course, implied that they did not employ him, and had never seen him with respect to the sale of the property. Upon this branch, therefore, of employment, the jury were not obliged to accept the statements of the Bursteins, nor would we be justified in disturbing their verdict, which, upon conflicting testimony, resolved this issue in the plaintiff's favor.

The closer question is whether or not the plaintiff was the procuring cause of the sale. Upon this branch we have not alone the plaintiff's testimony, but also that of two witnesses, father and son; the former of whom says that he was asked by the purchaser to appraise the property, and that such purchaser told him that it had been brought to his attention by the plaintiff, of which fact the witness informed Mr. Pomeranz at the time he inspected the building. The son supports the father's statements as to these declarations of the purchaser. On the other hand, the purchaser swore that the plaintiff had nothing to do with his buying the property, but that through other brokers he heard of it, and went to the Bursteins' house on a certain night, and then and there closed the transaction. This is to some extent corroborated by the defendants, who proved the injection of other brokers into the transaction, and, inferentially, that they had paid them for effecting the sale. In determining the weight and credibility of this testimony as to the consummation of the sale and the service of other brokers, the motives of the witnesses were important, and the jury had to consider not alone the fact that these brokers may have received the commission, but their relation to the parties. In this connection it was shown that one of the brokers named was a brother-in-law of the purchaser, and that another not only had other dealings with Mr. Burstein, but subsequently became his partner. It was testified that there were four brokers who were the procuring causes of the sale, but only the two having the relations mentioned to the parties were called as witnesses, although, in excuse for failure to call them, it was stated that one was at the time of the trial in Europe. Again, as affecting the testimony of the Bursteins that they did not know the plaintiff, and had no dealings with him in respect to the property, we have to weigh the testimony which they would have the jury believe, that, without previous knowledge of his existence prior to the day of the sale, a customer presented himself at their house, prepared to negotiate, make a deposit, and close a contract at an evening meeting, at which, according to the purchaser, he for the first time had formed

the idea of buying. It is unnecessary to dwell further upon the inherent probabilities or improbabilities of the different versions of the defendants and the plaintiff, respectively, more than to say that, whatever might be our own view if we were the triors of fact, there was here such a direct conflict, depending so much upon the credibility of the witnesses, and this in turn so dependent upon their appearance and demeanor on the stand, that we would not be justified on this branch of the case, any more than on the other, as to employment, in setting aside the jury's verdict.

We have examined the exceptions taken to the rulings, but do not think, save as to one, that they require any other comment than to state that we regard them as without merit. The one which we think calls for more discussion presents the point whether or not the complaint should have been dismissed as to the defendant Pomeranz. We have noted with respect to this subject that the amount of consideration paid by the Bursteins to Pomeranz was small compared with what would presumably have been the value of a half interest in this property, and that, notwithstanding the claim that Pomeranz had sold to the Bursteins such interest before the contract with the purchaser was made, he subsequently joined in the deed to the purchaser. As already intimated, however, the defendants acquiesced in the submission to the jury of this subject of the liability of the defendant Pomeranz, and we think that the question now urged was not raised at the trial in such a way as to make it available upon this appeal.

Upon the whole case, therefore, we think that the trial judge properly submitted the issues to the jury, and that the verdict is one which we have no right to disturb. The judgment and order accordingly should be affirmed, with costs.

PATTERSON and HATCH, JJ., concur.

VAN BRUNT, P. J. I dissent. The plaintiff never made out a prima facie case, and certainly upon the whole case there was no ground for recovery.

INGRAHAM, J., dissents.